UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

BOART LONGYEAR LTD., BOART
LONGYEAR GLOBAL HOLDCO, INC.,
LONGYEAR HOLDINGS, INC.,
RESOURCES SERVICES HOLDCO,
INC., and PROSONIC CORPORATION,

            Plaintiffs,

        - against -

ALLIANCE INDUSTRIES, INC.,
TERRA SONIC INTERNATIONAL,
LLC, HI-VAC CORPORATION,
PROMANCO, INC., MOLE MASTER
SERVICES CORP., and RUDOLPH
JOHN LEHMAN,

           Defendants.

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/12

**OPINION AND ORDER**

12 Civ. 1346

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

       Boart Longyear Ltd., Boart Longyear Global Holdco, Inc., Longyear

Holdings, Inc., Resources Services Holdco, Inc., and Prosonic Corporation

(collectively, "Boart Longyear") bring this action against fellow signatories

(Alliance Industries, Inc. and Rudolph John Lehman) to a Stock Purchase

Agreement ("SPA"), as well as some of the signatories' affiliates (Terra Sonic

1

International, LLC, Hi-Vac Corporation, Promanco, Inc., and Mole Master Services Corp.) (collectively, "the Affiliates").  The defendants now move to dismiss the plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and indemnification.  For the reasons stated below, the defendants' motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Boart Longyear is a leading provider of mineral exploitation services and drilling to the global market.[2]  In 2006, both Boart Longyear and Prosonic were leaders in sonic drilling services.[3]  Sonic drills create high frequency vibrations and are highly desirable for use in mineral exploitation and mine development.[4]  In order to become the world's leading provider of sonic drilling services, Boart Longyear sought to acquire the capital stock of Prosonic, which had developed a sonic drill that addressed certain durability and technical issues.[5]

### A.    The SPA

———————————

[1]    The following facts are drawn from the Complaint and assumed to be true for the purpose of adjudicating this motion to dismiss.

[2]    *See* Complaint ¶ 17.

[3]    *See id.* ¶ 18.

[4]    *See id.* ¶¶ 15–16.

[5]    *See id.* ¶¶ 18–20.

Boart Longyear, Lehman, and Alliance Industries, Inc. ("Alliance") entered into the SPA, under which Longyear Holdings, Inc. purchased all issued and outstanding capital stock of Prosonic for approximately seventy-two million dollars.[6]  Lehman was the sole shareholder of Alliance, which owned all of the issued and outstanding capital shares of Prosonic.[7]  In acquiring all of the capital stock of Prosonic, Boart Longyear acquired all of the corporation's intellectual property, including its proprietary sonic drill head, a drill rig, and tooling technology.[8]

The SPA provides that the agreement is to be construed in accordance with New York law.[9]  The parties agreed that any breach of the SPA would result in "irreparable damage" and that the injured party would be entitled to injunctive relief.[10]  The SPA also includes an indemnification clause, which provides for the indemnification of an injured party for any breach.[11]  Boart Longyear further

---

[6]      *See id.* ¶ 20.

[7]      *See id.*

[8]      *See id.* ¶ 21.

[9]      *See* 12/06/06 Stock Purchase Agreement ("SPA"), Ex. 2 to 4/02/12 Declaration of Marc E. Bernstein, defendants' counsel, at 49.

[10]      *See id.* at 48.

[11]      *See id.* at 36.

alleges that it has sustained injuries in the form of damaged customer relationships, business expectations, reputation, and goodwill, as well as lost profits and market share and the replacement cost of employees impermissibly solicited by Lehman or the Affiliates.[12]

### 1.     The Non-Compete Clause

The SPA contains a Non-Compete clause that excluded defendants from engaging in any business that competed with any portion of the worldwide sonic drill business for a five-year Non-Compete Period:[13]

> During the period from the Closing Date through the five-year anniversary of the Closing Date (the "Non-Compete Period"), neither Seller nor its sole stockholder, Lehman, nor any of their respective Affiliates, will engage, directly or indirectly, whether through the ownership of equity securities, the provision of services . . . in any business that competes with any portion [of] the Business anywhere in the world . . . .[14]

The Non-Compete Period expired on December 6, 2011.[15]  The "Business" is defined as "providing Sonic drilling services for environmental site characterization and remediation, mineral, sand and gravel exploration,

---

[12]     *See* Complaint ¶ 46.

[13]     *See id.* ¶ 45.

[14]     SPA at 29–30 (emphasis in original).

[15]     *See* Complaint ¶ 23.

geoconstruction applications, and water exploration and water supply services."[16]

### 2.    The Non-Solicitation Clause

The SPA also contains a Non-Solicitation clause that prohibited defendants from hiring any Boart Longyear employees during the Non-Compete Period:[17]

> Each of Seller, its sole stockholder, Lehman . . . and Buyer agrees that, during the Non-Compete Period . . . none of the Seller Party, Buyer, nor any of their respective Affiliates will, to the extent applicable, directly or indirectly, hire any director, officer, or employee of the other party or any entity that is a direct or indirect subsidiary of the other party as of the Agreement date.[18]

### A.    Alleged Breaches

### 1.    Development of a Lehman Rig

Following the execution of the SPA, Boart Longyear sought to keep secret the sonic drilling technology it had acquired through the SPA and subsequently developed.[19]  It did not sell sonic drills, but only used the drills in the service of its customers.[20]  Following the execution of the SPA, Boart Longyear

---

[16]    SPA at 2.

[17]    *See* Complaint ¶ 22.

[18]    SPA at 30.

[19]    *See* Complaint ¶ 27.

[20]    *See id.*

added improvements to the sonic drill:  a rod hoop designed to prevent unused drill rods from tipping over, a larger grease piston accumulator, and specialized parker motors to drive the oscillator in the sonic drill head.[21]

In September 2010, information circulated among Boart Longyear employees that Lehman was building a sonic drill rig.[22]  On or before that time, both Boart Longyear and the Affiliates operated in a leased facility in Marietta, Ohio.[23]  Boart Longyear employees in the Marietta facility noticed a sonic drill (the "Lehman rig") that appeared to be "virtually identical" to the sonic drilling rigs developed and manufactured by Boart Longyear, employing the technology acquired through the SPA.[24]  This Lehman rig also included the developments added by Boart Longyear after the SPA's execution.[25]

In August 2011, a Boart Longyear employee observed the completed Lehman rig in the Marietta facility.[26]  In October 2011, Boart Longyear employees noticed a website for Terra Sonic International ("Terra Sonic") that advertised the

---

[21]     *See id.* ¶ 28.

[22]     *See id.* ¶ 30.

[23]     *See id.* ¶ 31.

[24]     *See id.*

[25]     *See id.* ¶ 36.

[26]     *See id.* ¶ 32.

sale of sonic drilling products including the Lehman rig seen at the Marietta facility.[27]  In addition to operating its website, Terra Sonic maintained a booth at the National Drillers Association Trade Show, where it displayed a sonic drill rig.[28]  Lehman is a founder, director, and managing member of Terra Sonic.[29]  Lehman was and is the President and owner of Promanco, Inc. (Promanco), the Chairman of Hi-Vac Corporation (Hi-Vac), and the President of Mole Master Services Corp. (Mole Master).[30] Lehman, possibly in conjunction with the Affiliates, designed and engineered products identical to Boart Longyear's during the Non-Compete Period.[31]

Alliance and Lehman did not provide Boart Longyear with backup copies of the programs used to create Prosonic's tooling following the execution of the SPA and retained these documents to use in designing the Lehman rig.[32]  Further, Lehman and the Affiliates acquired unique specifications and other proprietary information (including Boart Longyear's market research data,

---

[27]     *See id.* ¶ 33.

[28]     *See id.* ¶ 40.

[29]     *See id.* ¶ 34.

[30]     *See id.* ¶ 35.

[31]     *See id.* ¶ 36.

[32]     *See id.* ¶ 39.

technical blueprints, manufacturing techniques, equipment organization, technician instruction, training materials, strategic design, and manufacturing protocols).[33]

### 2. Solicitation of Boart Longyear Employees

Following the execution of the SPA, three former Prosonic employees (James Savinkoff, John Walsh, and Scott Alexander) ("the former employees") began working for Boart Longyear.[34]  These valuable employees had considerable experience with sonic drilling.[35]  Between December 31, 2007 and December 31, 2009, the former employees terminated their employment with Boart Longyear.[36] "[T]hey had been solicited" to work for one or more of the defendants.[37]  They assisted Lehman or the Affiliates in building the Lehman rig.[38]

## III.  LEGAL STANDARD

### A.  Motion to Dismiss

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must assume "all well-pleaded, nonconclusory factual

---

[33]    *See id.* ¶ 38.

[34]    *See id.* ¶ 25.

[35]    *See id.* ¶ 26

[36]    *See id.* ¶ 29.

[37]    *Id.*

[38]    *See id.* ¶ 30.

8

allegations in the complaint to be true"[39] and "draw all reasonable inferences in the plaintiff's favor."[40]  On the other hand, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[41]  To survive a motion to dismiss, therefore, the allegations in the complaint must meet a standard of "plausibility."[42]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]  Plausibility "is not akin to a probability requirement," rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[44]

The plaintiff in support of her claim may allege "upon information and belief" facts that are "peculiarly within the possession and control of the

---

[39]   *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 , 678–679 (2009)).

[40]   *Ofori Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[41]   *Iqbal*, 556 U.S. at 678 (citation omitted).

[42]   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  *Accord Iqbal*, 556 U.S. at 678.

[43]   *Iqbal*, 556 U.S. at 678 (citation omitted).

[44]   *Id.* (quotation marks omitted).

9

defendant."[45]  Conversely, the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption.[46]  Such matters include "'matters of public record or matters generally known in the community . . . inasmuch as everyone is held to be conversant with them.'"[47]

## B.     Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[48]  Although "[t]he Court should freely give leave when justice so requires,"[49] it is "within the sound discretion of the district court to grant or deny leave to amend."[50]  When a motion to dismiss is granted, "[i]t is the usual practice . . . to allow leave to

---

[45]     *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[46]     *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 177 n.2 (2d Cir. 2010).

[47]     *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 300–01 (3d ed. 2004)).

[48]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[49]     Fed. R. Civ. P. 15(a)(2).

[50]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted)

repled."[51]  Where plaintiff inadequately pleads a claim and cannot offer additional

substantive information to cure the deficient pleading, granting leave to repled is

futile.[52]

## IV.   APPLICABLE LAW

### A.   Breach of Contract

To make out a breach of contract claim under New York law, a

plaintiff must show "'(1) the existence of an agreement, (2) adequate performance

of the contract by the plaintiff, (3) breach of contract by the defendant, and (4)

damages.'"[53]  A plaintiff alleging a breach of contract claim is required only to

provide a defendant with a "short, plain notice" of the claims against it pursuant to

Rule 8.[54]  However, a breach of contract claim "that fails to allege facts sufficient

to show that an enforceable contract existed between the parties is subject to

---

[51]   *Schindler v. French,* 232 Fed. App'x 17, 18 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991)) (quotation marks omitted).

[52]   *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[53]   *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[54]   *See Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 WL 6217754, at *19 (S.D.N.Y. Mar. 31, 2006) (citing *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999)).

dismissal."[55]

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

The covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[56]  The covenant is implied in every contract governed under New York law.[57]  Accordingly, a "breach of the implied duty of good faith is considered a breach of the underlying contract."[58]  For this reason, "a claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."[59]

**C.      Agency**

---

[55]      *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citation and quotation marks omitted).

[56]      *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (quotation marks and citation omitted).

[57]      *See M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

[58]      *Deutsche Bank Secs., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (citing *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)).

[59]      *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) (quotation marks and citation omitted).

12

Under common law principles, the establishment of an agency relationship requires facts sufficient to demonstrate two factors: "(1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent."[60] In addition, "the principal must maintain control over key aspects of the undertaking."[61] The control issue is not critical where a case concerns contractual liability — in that case, "if the agent had the authority to enter into the contract, the principal will be bound."[62]

## V.   DISCUSSION

### A.   Claims Are Not Properly Pled Against All Defendants

#### 1.   Claims Against the Affiliates Are Dismissed

Plaintiffs argue that Lehman had the authority to bind the Affiliates[63] because he is the Director of Terra Sonic, President and Owner of Promanco, Chairman of Hi-Vac, and President of Mole Master.[64] While these facts speak to

---

[60]     *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) (citations omitted) (citing Restatement (Second) of Agency §§ 15, 26).

[61]     *Id.* (citations omitted).

[62]     *Id.* (citing Restatement (Second) of Agency § 147).

[63]     *See* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem.") at 18.

[64]     *See* Complaint ¶¶ 34–35.

13

the control aspect of the agency calculus (which is irrelevant in a contractual

liability case), they do not demonstrate either of the required elements of the

Affiliates's assent to Lehman's authority or Lehman's agreement.[65]  As a result, the

plaintiff has failed to plead sufficient facts demonstrating that Lehman had

authority to bind the Affiliates to the SPA, and the claims against them are

dismissed.

### 2.    The Complaint Is Sufficiently Specific with Regard to the Signatory Defendants

Boart Longyear alleges that Lehman was engaged in the design and

development of a sonic drill rig during the Non-Compete Period.[66]  Lehman is the

sole shareholder of Alliance, a signatory to the SPA.[67]  Further, Boart Longyear has

alleged that the products produced by Lehman were sold online.[68]  These

---

[65]    *See Commercial Union Ins. Co.*, 347 F.3d at 462 (citations omitted) (citing Restatement (Second) of Agency §§ 15, 26) (finding that an agency relationship is established when there are facts sufficient to demonstrate both that the principal intended to grant authority to the agent and the agent assented).  *See also Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 483 (2010) ("Whether apparent authority exists is a fact-based determination requiring inquiry into the conduct of the principal.").

[66]    *See* Complaint ¶ 36.

[67]    *See id.* ¶ 20.

[68]    *See id.* ¶ 33.

allegations regarding Lehman and Alliance are sufficiently specific under Rule 8.[69]

**B.      Claim I — Breach of Contract**

      **1.      Boart Longyear Has Not Stated a Claim for Breach of the Non-Solicitation Clause**

      Boart Longyear has properly pled the existence of the Non-Solicitation Clause[70] and its own adequate performance.[71]  However, Boart Longyear has failed to sufficiently plead facts plausibly indicating that the former employees were solicited *while* they were still employees at Boart Longyear.  The Non-Solicitation clause prevents solicitation of employees "of the other party"[72] — not former employees.  The complaint states that the former employees terminated their employment between 2007 and 2009, and that these employees "had been" solicited by the defendants.[73]  As the defendants correctly argue, it does not allege that the former employees were solicited while current employees of Boart

---

      [69]     *See Contractual Obligation Prods., LLC*, 2006 WL 6217754, at *19 (citing *Weiss*, 69 F. Supp. 2d at 462) (holding that under the Rule 8 standard, a short, plain statement is sufficient).

      [70]     *See* Complaint ¶¶ 22, 43; SPA at 30.

      [71]     *See* Complaint ¶ 44.

      [72]     SPA at 30.

      [73]     *See* Complaint ¶ 29.

Longyear.[74]  As a result, Boart Longyear has failed to plead a breach of the Non-Solicitation clause by the defendants.[75]  Boart Longyear has pled damages in addition to the assumed damages that are triggered by the SPA in the event of a breach, including but not limited to loss of business expectations and goodwill.[76]  However, because Boart Longyear has not alleged a breach, these damages claims also are dismissed.[77]

### 2. Boart Longyear Has Stated a Claim for Breach of the Non-Compete Clause

Boart Longyear has properly pled the existence of the Non-Compete clause,[78] and its own performance under the SPA.[79]  It has also pled sufficient facts to support a reasonable inference that the defendants breached the Non-Compete

---

[74]     *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 10.

[75]     *See Cenveo Corp. v. Diversapack LLC*, No. 09 Civ. 7544, 2009 WL 3169484, at * 8 (S.D.N.Y. 2009) (holding that where an SPA does not mention former employees, but only current employees, and a complaint only alleges that former employees were solicited, there is no breach of a non-solicitation clause).

[76]     *See* Complaint ¶ 46.

[77]     *See Eternity Global Master Fund Ltd.*, 375 F.3d at 177 (quoting *Harsco Corp.*, 91 F.3d at 348) (finding that, under New York law, a claim for breach of contract must include a breach by the defendant).

[78]     *See* Complaint ¶ 22; SPA at 29–30.

[79]     *See* Complaint ¶ 44.

clause.  Boart Longyear has alleged that Lehman and the Affiliates have engaged in a business that competes with "a portion"[80] of the worldwide sonic drilling services business — namely, the design and sale of sonic drills.[81]  Defendants argue that plaintiffs must allege that the defendants were providing drilling *services* during the Non-Compete period.[82]  However, the clause is sufficiently broad to encompass "any business" that competes with "any portion" of the provision of those services.[83]

The development and sale of sonic drilling technology is a business that plainly competes with a portion of the sonic drilling services business.[84]  As a result, plaintiffs have sufficiently alleged a breach and the SPA automatically triggers "irreparable damage,"[85] in addition to the separate injuries the plaintiff has

---

[80]     SPA at 30.

[81]     *See* Complaint ¶ 36.

[82]     *See* Def. Mem. at 3.

[83]     SPA at 30.

[84]     *See White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007) ("[U]nambiguous provisions of [a] contract must be given their plain and ordinary meaning.").  *Accord Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569–570 (2002) (citation omitted) ("[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity.").

[85]     Def. SPA at 49.

17

alleged.[86]  Thus, Boart Longyear has properly pled all the elements of breach of

contract under New York law.[87]

### C.    Claim II — Breach of the Implied Covenant of Good Faith and Fair Dealing

Boart Longyear argues that its breach of the implied covenant of good

faith and fair dealing claim is based on a different factual predicate than its breach

of contract claim, because Count I is based on competition and Count II is based on

"the re-building of a business."[88]  This argument has little merit as the facts

supporting the breach — the competition — describe the same rebuilding

process.[89]  The claims are based on the same factual elements. Thus, this claim is

dismissed as redundant.[90]

---

[86]    *See* Complaint ¶ 49.

[87]    *See supra* Part IV.A.

[88]    *See* Pl. Mem. at 14.

[89]    *See* Complaint ¶¶ 36–39, 45, 50.

[90]    *See Harris v. Provident Life & Accidental Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.").  *See also ICD Holdings S.A.*, 976 F. Supp. at 243–44 (finding that breach of implied covenant of good faith claims will be dismissed as redundant when they share a factual predicate with a breach of contract claim).

### D.    Claim III — Indemnification

To counter the indemnification claim, the defendants argue only that if the breach of contract claims fail, so too must the indemnification claim.[91] However, one breach of contract claim survives.[92]  Boart Longyear has plausibly stated a claim for a breach of the Non-Compete clause.[93]  Due to the indemnification clause in the SPA, which provides for indemnification arising out of any breach of the SPA, the indemnification claim may proceed with regard to the surviving breach of contract claim.[94]

### E.    Leave to Replead Is Partially Granted

Leave to replead is granted as to the Non-Solicitation claim and the claims against the Affiliates.  Leave to replead is denied with regard to the implied covenant of good faith and fair dealing claim, which is redundant.[95]

## VI.   CONCLUSION

For the foregoing reasons, the claims against Terra Sonic

---

[91]    *See* Def. Mem. at 14.

[92]    *See supra* Part V.B.2.

[93]    *See id.*

[94]    *See* Def. SPA at 36.

[95]    *See Cuoco,* 222 F.3d at 112 (finding that when a party cannot offer additional substantive facts to cure a deficient pleading, amending is futile).

19

International, LLC, Hi-Vac Corporation, Promanco, Inc., and Mole Master

Services Corp. are dismissed. The remaining defendants' motion to dismiss the

breach of the Non-Solicitation clause and the breach of the implied duty of good

faith and fair dealing claims is granted.  The breach of the Non-Compete clause

and indemnification claims survive. Any amended Complaint must be filed within

thirty (30) days of the date of this Order.   The Clerk of the Court is directed to

close this motion (Docket No. 3).  A conference is scheduled for June 30, at 4:30

p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 20, 2012

20

**- Appearances -**

**For Plaintiffs:**

Alan M. Fisch, Esq.
Kaye Scholer LLP (DC)
901 Fifteenth Street, Suite 1100
Washington, DC 20005
(202) 682-3500

Robert R. Laurenzi, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000 ext. 7235

**For Defendants:**

Marc E. Bernstein, Esq.
Paul Hastings LLP (NY)
75 East 55th Street
New York, New York 10022
(212) 770-6907